UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESTATE OF KYLE THOMAS BRENNAN,
By and through its Administrator,
Victoria L. Britton,

       Plaintiff,

v.                            Case No. 8:09-cv-264-T-23EAJ

CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
DENISE MISCAVIGE GENTILE,
GERALD GENTILE, and
THOMAS BRENNAN

       Defendants.
_____/

**DEFENDANT, CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION INC.'S, RESPONSE TO ESTATE'S SECOND EMERGENCY MOTION FOR PERMANENT INJUNCTION AND MOTION FOR SANCTIONS**

Defendant, Church of Scientology Flag Service Organization, Inc. (FSO Church), hereby files this response and states:

1.      Attorney Dandar, counsel for the plaintiff herein, requests this Court to issue a permanent injunction[1] preventing the defendant, FSO Church, and its attorneys from seeking to enforce Attorney Dandar's violation of a May 26, 2004 settlement agreement in a totally unrelated state court proceeding.[2]  Attorney Dandar asserts that his failures to comply with the state court's orders have

_____

[1] Attorney Dandar apparently seeks relief under Rule 65, Fed R.Civ.P. which provides for temporary restraining orders and preliminary injunctions.

[2] The state court proceeding arises out of state law based claims brought by the Estate of Lisa McPherson which litigation began in August 2000 and which resulted in a confidential settlement agreement dated May 26, 2004. The confidential settlement agreement has been the subject of almost continuous court proceedings ever since. See attached partial docket sheet detailing the record activity since May 2004.

resulted in the state court finding him in contempt. He complains that the findings of contempt are erroneous, burdensome, unfair, and that because the underlying order compels him to withdraw from representing the plaintiff herein they are interfering with his ability to represent his client before this Court. He therefore asks that this Court enjoin the state court proceedings.

2.      Attorney Dandar previously asked this Court for an injunction against the state circuit court (Dkt. at 104); that motion, however, was denied. (Dkt. at 108)  Nevertheless Attorney Dandar asks for sanctions against the FSO Church and its counsel for violating the order denying the injunction.

3.       For the reasons more fully set forth in the below memorandum of law, this Court lacks the authority and the jurisdiction to enjoin the state court proceedings which arise out of claims totally unrelated and filed well before the claims asserted by the Estate of Kyle Brennan.

Wherefore, Defendant, FSO Church, respectfully requests that the second emergency motion for permanent injunction and motion for sanctions be denied.

## **<u>MEMORANDUM OF LAW IN SUPPORT</u>**

### **I.      Underlying facts and issues**

On May 26, 2004 the FSO Church entered into a settlement agreement with the Estate of Lisa McPherson, which was represented by Attorney Dandar. A key and critical element of the settlement agreement was a confidentiality provision. The agreement also contained a disengagement provision through which the parties agreed to cease all litigation, past and future, against each other. Kennan Dandar and his law firm were made parties to the settlement

agreement because the matters settled by the agreement included matters to which Attorney Dandar and his law firm were parties, not just acting as counsel..

As a result of being a party to the settlement agreement Kennan Dandar and his firm are contractually prohibited from representing the plaintiff in this case. The legality of that contractual prohibition has been litigated between the FSO Church and Kennan Dandar in state court, it has been found to be valid, and the finding has been affirmed by the 2nd District Court of Appeal. *Dandar v. Church of Scientology Flag Service,* 25 So.3d 1233 (Fla. 2nd DCA 2009). .The doctrine of *res judicata* prevents any further litigation of that issue in either state or federal court. No appeal was taken to the U.S Supreme Court and none could be taken because no federal constitutional issues existed.

The state court has since entered orders directing Attorney Dandar and his law firm to cease representation of any party adverse to the FSO Church and directing Attorney Dandar to file a motion to withdraw from this case.  The state court has found Attorney Dandar to be in willful violation of those orders and has indicated that it will issue further orders and hold further proceedings to enforce those orders. The state court's first order finding willful contempt is currently under appeal. A second order confirming the first finding, awarding a money judgment, and scheduling an additional hearing has been verbally announced, but has not yet been reduced to writing.

This Court has raised the question of whether the state court orders interfere with this Court's jurisdiction over the claims raised by the Estate of Kyle Brennan and whether they should be enjoined for that reason. Further this Court

has raised the question of whether a suspension of Attorney Dandar's license to practice law by the state court would constitute interference with this Court's jurisdiction and/or whether this Court has the authority to "un-suspend" any suspension.

While not articulated, the question also exists as to whether Attorney Dandar has a conflict of interest such that he is mandated to withdraw from further representation pursuant to Rule 4-1.7, Rules Regulating the Florida Bar which provides in part: "a lawyer shall not represent a client if … (2) there is a substantial risk that the representation… will be materially limited by….a personal interest of the lawyer." Currently Attorney Dandar is accruing substantial daily financial penalties, is at risk that a substantial money judgment will be entered against him, and is at risk of losing his license to practice law if he continues to represent his client in this matter. There is a substantial question as to whether he can meet his duty of loyalty and provide independent judgment to his client under such circumstances. Rule 2.03(c), M.D. Fla. Rules, specifically recognizes compelling ethical considerations as a basis for attorney withdrawal in civil proceedings even when withdrawal will cause continuance or delay.

## II.    Authority of federal courts to enjoin state court proceedings

Federal district courts generally do not have the power to enjoin state court proceedings because (1) such courts lack subject-matter jurisdiction, (2) the federal anti-injunction act restricts the authority of federal courts to enjoin state courts, (3) the Full Faith & Credit Act, 28 USC § 1738, requires federal courts to honor state court orders, and (4) the *Rooker-Feldman* doctrine prevents

federal district courts from acting as *de facto* appellate courts[3].

28 U.S.C. § 2283 (2010), known as the federal anti-injunction statute, provides: "A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." In *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970) the District Court in Jacksonville, Florida denied an injunction against a union picketing a switching yard.  The owner of the yard then sought and obtained an injunction barring the picketing from a Florida state court.  *Id.* at 283-284.  The union returned to the District Court  and requested an injunction against enforcement of the state court injunction, which request was granted.  *Id.* at 284.  The Supreme Court reversed holding that an injunction was unjustified under any exception to the anti-injunction statute. *Id.* at 285.

After discussing the historical underpinnings of the anti-injunction act, the court noted the strong desire to keep state and federal courts separated and to have "lines of demarcation" between them  *Id.* at  286.  The court held "any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to [28 U.S.C.] § 2283."   *Id.* It further noted that the "statutory prohibition against such injunctions . . . rests on the fundamental constitutional independence of the States and their courts," and that therefore "any exceptions should not be enlarged by loose statutory construction."  *Id.* at 287.   "Proceedings in state

---

[3] See arguments and case law cited in Defendant, Church Of Scientology Flag Service Organization Inc.'s, Response To Estate's Emergency Motion For Injunction. (Dkt. at 105)

courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts . . . ." *Id.*  This is so even if the federal court is certain the state court's action is improper or wrong.  *Id.* at 296.  *See also*, *In re Bayshore Ford Truck Sales*, 471 F.3d 1233, 1250 (11th Cir. 2006) (the anti injunction act is an absolute prohibition against federal court enjoinment of state court proceedings, unless the injunction falls  within one of the specifically defined exceptions which must be strictly construed).

In *Burr & Forman v. Blair*, 470 F.3d 1019 (11th Cir. 2006) the court again reversed an injunction issued by a federal district court against a state court proceeding and stated:

> The All Writs Act and the Anti-Injunction Act are closely related, and where an injunction is justified under one of the exceptions to the latter a court is generally empowered to grant the injunction under the former.  . . . Thus, in assessing the propriety of an injunction entered to stop a state court proceeding, the sole relevant inquiry is whether the injunction qualifies for one of the exceptions to the Anti-Injunction Act.

 *Id.* at 1027-28.  Noting that the statute's "animus is clearly rooted in . . . a desire to avoid tension and preserve comity between the federal and state courts," and "[b]ecause it is grounded in the constitutional guarantees of independence between the state and federal systems," the court held that the exceptions to the anti-injunction act must be narrowly construed.  *Id.* at 1028.

The court noted that injunctions predicated on the "'necessary in aid of jurisdiction' exception have been upheld in only two distinct situations. The first is

where the federal court in an *in rem* proceeding obtains jurisdiction over the *res* before the state court action involving the same *res* is brought." *Id.,* citing *In re Abraham,* 421 F.2d 226, 228 (5th Cir.1970) (holding injunction of state court proceedings proper where federal court had initial, prevailing jurisdiction over disputed property); *Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp.,* 244 F.2d 394, 399-400 (5th Cir.1957) (upholding injunction of state proceeding seeking to replevy asset sold by trustee); *In re Am. Honda Motor Co., Inc., Dealerships Relations Litig.,* 315 F.3d 417, 439 (4th Cir.2003) ("The 'necessary in aid of its jurisdiction' exception to the Anti-Injunction Act is widely understood to apply most often when a federal court was the first in obtaining jurisdiction over a *res* in an *in rem* action and the same federal court seeks to enjoin suits in state courts involving the same *res*."), *cert. denied*, *Miller v. Silver*, 540 U.S. 816 (2003); 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, & Vikram David Amar, Fed. Prac. & Proc., Juris. § 4225 (2d Ed.1988).

The second distinct situation is where orders enjoining state court proceedings were issued in contexts "roughly analogous to proceedings *in rem,* such as where enjoining the state court proceeding is necessary to protect an earlier issued federal court injunction." *Blair*, 470 F.3d at 1029. This use of  the exception has occurred in school desegregation cases, court ordered redistricting, and complex anti-trust judgments. *Id.* "These cases, however, represent the outermost limits of the exception."  *Id.*  "[O]utside of those cases where an analogy can be drawn to *in rem* proceedings, the general rule remains. "an injunction cannot issue to restrain a state action" even when it involves the

same subject matter at the same time. *Id.* (citation omitted). "For an injunction properly to issue, the matter in controversy in the federal court proceeding must be 'the virtual equivalent' of a controversy over disputed *res* in an *in rem* proceeding *and* the state court proceeding must constitute a threat to the federal court's resolution of that controversy." *Id.* at 1032 (emphasis in original). *See also Jos. L. Muscarelle, Inc. v. Central Iron Mfg. Co.*, 328 F.2d 791, 794 (3d Cir. 1964) ("If the enjoined state proceeding could not prejudice any otherwise proper disposition of some claim pending in the federal suit, the injunction cannot be in aid of invoked federal jurisdiction."); *Nongard v. Burlington County Bridge Comm'n*, 229 F.2d 622,625 (3rd Cir. 1956) (holding federal court had no power under the "in aid of its jurisdiction" exception to enjoin a state court where plaintiffs complained that a New Jersey equity court arbitrarily and unfairly adjudicated a controversy)

There is nothing about the ongoing state court proceedings which interferes with this Court's jurisdiction. There is no *res* over which the state and federal courts are asserting joint jurisdiction. This Court has continued unfettered jurisdiction to resolve the dispute between the parties to this case. While Attorney Dandar's unavailability due to withdrawal or suspension of his license may result in continuance or delay it does nothing to interfere with this Court's jurisdiction. The same result would occur if, for instance, Attorney Dandar was temporarily incapacitated by illness; this Court would continue to have unfettered jurisdiction and it could either delay proceedings or direct the client to find new counsel. Certainly there is nothing within these proceedings or the state court proceeding

which is even roughly analogous to proceedings *in rem* over the same *res*.

### III.   Court's power to regulate the practice of law

In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423  (1982), a lawyer under investigation by the local ethics committee filed suit in federal  district court claiming that the disciplinary rules violated his federal constitutional rights.  The *Middlesex* court held that the district court was obligated to abstain from the case for the reasons announced in *Younger v. Harris*, 401 U.S. 37 (1971).

> The State of New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses. States traditionally have exercised extensive control over the professional conduct of attorneys. . . . The ultimate objective of such control is "the protection of the public, the purification of the bar and the prevention of a re-occurrence." . . .  The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice. . . .
>
> The importance of the state interest in the pending state judicial proceedings and in the federal case calls *Younger* abstention into play. So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain.

457 U.S. at 433 (citation omitted).

Likewise in  *Mason v. The Florida Bar*,  2005 WL 3747383, 3 (M.D.Fla. 2005), the magistrate judge[4] was called upon by the Florida Bar to abstain from hearing constitutional issues of free speech  raised by a lawyer  in federal court

---

[4] The district court adopted the Magistrate's report and recommendation at 2006 WL 305483 (M.D.Fla.).

as a defense to state disciplinary proceedings against the lawyer. After first
determining that the disciplinary proceedings constituted judicial proceedings, the
court determined that abstention was mandated under both the *Younger* and
*Pullman*[5] decisions. The abstention doctrine arising out of *Younger v. Harris*
generally requires federal courts to abstain from hearing federal constitutional
claims that involve or call into question ongoing state procedures. While *Younger*
emanated from the context of state criminal proceedings, in subsequent cases
the court extended the application of the doctrine to civil proceedings which
involve important state interests, *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 10-
111987), to state administrative proceedings, *Ohio Civil Rights Comm'n v.
Dayton Christian Schs., Inc.,* 477 U.S. 619, 627(1986), and to disciplinary
proceedings initiated by a state bar. *Middlesex County Ethics Comm., supra* ;
*American Civil Liberties Union v. The Florida Bar,* 999 F.2d 1486, 1493 n. 15
(11th Cir. 1993).

Likewise in  *Thompson v. Florida Bar*, 526 F. Supp. 2d 1264 (S.D. Fla.
2007), the U.S. District Court in Miami found the *Younger* abstention doctrine
applicable to a lawyer's request for an injunction to stop disciplinary proceedings
brought by the Florida Bar. The court found that all three of the
Y*ounger/Middlesex* criteria were satisfied. The proceedings were judicial in
nature, an important state interest was implicated, and the Florida courts were
able to hear and address any U.S. Constitutional claims/defenses. *Id.*

The *Thompson* court also explored the bad faith, harassment and
extraordinary circumstances exception to the  *Younger/Middlesex* abstention

---

[5] *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496 (1941).

doctrine. It noted that for a proceeding to be undertaken in bad faith it must generally be brought without a reasonable expectation of obtaining a valid conviction or driven by a retaliatory motive or other nefarious purpose. *Id* at 1277. Attorney Dandar can make no such showing here and has not even attempted to plead such a claim. The proceedings in state court which he seeks to enjoin are proceedings in which the state court simply seeks to enforce a court order issued pursuant to a final judgment which has been affirmed by the applicable state appellate court and in which no constitutional claim or defense was raised. The *Thompson* court also explored the extraordinary circumstance exception and found it to exist in only very limited scenarios. *Id* at 1281. One is where the statute or rules are unconstitutional in every application and two is where the agency [or court] is incompetent by reason of bias to adjudicate the issues before it. *Id.* Once again Attorney Dandar has made no showing and can make no showing that it is unconstitutional in every application for a state court to enforce its orders or that a state court is incompetent to enforce its own orders.

Attorney Dandar has repeatedly told this Court that his challenge to the state court proceedings is based on lack of subject matter jurisdiction and that his lack of jurisdiction argument is currently before the state appellate court. The FSO Church does not dispute either of these representations. There is no contention by Attorney Dandar, and there can be none, that he has raised any defense implicating any rights guaranteed him by the U.S Constitution. The issue still being addressed by the state court is whether Mr. Dandar has willfully failed to comply with previous orders of the state court and if so what the

sanction will be. These pending matters are entirely within the jurisdiction of the state courts and no review of these actions is possible by any federal court other than the U.S. Supreme Court. *Atlantic Coast Line Railroad*, 398 U.S. at 287. Both the abstention doctrine and the *Rooker-Feldman*[6] doctrine (bars federal district courts from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment) prevent this Court from inserting itself into the ongoing state court proceedings between the FSO Church and Attorney Dandar.

Nevertheless it must be noted that the U.S. Supreme Court and other federal courts including the 11th Circuit Court of Appeals have recognized the power and authority of federal courts to allow an attorney disbarred or suspended from a state bar to continue practicing before a federal court. In *Selling v. Radford*, 243 U.S. 46 (1917), the court recognized that while admission to a state's high court is a prerequisite for admission to the Supreme Court, there are situations where losing that admission would not affect the U.S. Supreme Court admission. Those situations are: 1) the state procedure is wanting in due process; 2) an infirmity of proof gives rise to a clear conviction that the disbarment or suspension will not be the final conclusion of that disciplinary matter; or 3) some other exceptional circumstance makes the disbarment or suspension contrary to the principles of right and justice.

Likewise, in *Theard v. United States,* 354 U.S. 278, 282 (1957) the Supreme Court held that "disbarment by federal courts does not automatically flow from disbarment by state courts." While a lawyer is admitted into a federal

---

[6] *Rooker v. Fidelity Trust Company,* 263 U.S. 413 (1923)

court by way of state courts, he is not automatically sent out of the federal court by the same route. *Id*. Both the state judiciary and the federal judiciary have autonomous control over the conduct of their officers, including lawyers. *Id*. at 281. The *Theard* court noted that it and most federal courts have practice rules stating that if an attorney is disbarred by a state, he is also suspended by the federal court, but can then show good cause within a prescribed time period why he should not be disbarred by the federal court. *Id*. at 281-282.

The 11th Circuit Court of Appeal addressed the same issue in *Matter of Calvo*, 88 F.3d 962 (11th Cir. 1996), and held that a lawyer disbarred by a state is required to show good cause why he should not be disbarred by the federal court and that the inquiry for the federal court to make is whether any of the infirmities identified in *Selling* exist or not. *Id*. at 967. The appellate court then reviews only for an abuse of discretion. *Id*. at 967.

In *Greer's Refuse Serv., Inc. v. Browning-Ferris Indus.,* 843 F.2d 443, 447 (11th Cir.), *cert. denied sub nom, Wilkes v. U.S. Dist. Ct. for M.D.Fla.,* 488 U.S. 967 (1988), the 11th Circuit stated:

> First, federal district courts have clear statutory authority to
> promulgate rules governing the admission and conduct of the
> attorneys who practice before them. . . . Second, the Middle
> District, pursuant to that authority, has promulgated rules
> providing that general admission to practice in that court is
> conditioned upon admission to the Florida Bar; these rules
> further provide that state disbarment may be grounds for
> suspension from the Middle District bar. The Supreme Court has
> implicitly upheld the validity of rules such as those promulgated
> by the Middle District. . . .

The Middle District of Florida's current rule on the admission and conduct

of attorneys is found at  Rule 2.04, M.D. Fla. Rules, which provides in pertinent

part:

> Whenever it appears to the Court that any member of its
> bar, admitted generally under Rule 2.01 or then appearing
> specially under Rule 2.02, has been disbarred or suspended
> from practice by the Supreme Court of Florida, or by any other
> court of competent jurisdiction, as the case might be, … such
> disbarment, suspension, resignation, or conviction shall, twenty-
> one (21) days thereafter, operate as an automatic suspension of
> such attorney's right to practice in this Court; provided, however,
> the attorney may file, within such twenty-one (21) day period, a
> petition, with a copy served upon the United States Attorney,
> seeking relief from the operation of this rule, and if a timely
> petition is filed, suspension shall be stayed until the petition is
> determined. If such petition is filed by an attorney who has been
> admitted to practice generally under Rule 2.01 of these rules, it
> shall be heard and determined by the Chief Judge of the Court
> sitting with any two or more of other judges of the District as the
> Chief Judge shall designate.

Thus, it is clear that this Court should abstain from any interference with

the state court proceedings under both the *Younger/Middlesex* abstention

doctrine and the Rooker-Feldman doctrine. However, if the state court

proceedings result in a suspension or disbarment, this Court would then have the

power and authority, upon a timely petition, to determine whether that

suspension would also work a suspension or disbarment from this court based

on whether the  infirmities identified in *Selling* exist or not.

## IV.    Attorney Dandar's obligation to withdraw under Rule 4-1.7, Rules Regulating the Florida Bar

Rule 4-1.7, Rules Regulating the Florida Bar provides in part:  "a lawyer

shall not represent a client if … (2) there is a substantial risk that the

representation… will be materially limited by….a personal interest of the lawyer." Attorney Dandar has a substantial conflict of interest which makes it virtually impossible for him to provide his client with the requisite loyalty and independent judgment all lawyers owe their clients.   He is currently accruing substantial financial penalties which he has claimed will "put me out of business" and now is at some additional risk of having his license to practice law suspended. Both of these issues directly arise out of his violation of the May 26, 2004 settlement agreement  Attorney Dandar has a duty under Rule 11, Fed R. Civ.P. and under his professional duty of care to exercise "independent judgment" in advising his client on whether to continue  pursuit of  a matter when the absence of proof becomes evident. *Tucker v. CBE Group, Inc.*, 2010 WL 1849034 (M.D.Fla.2010) (party and counsel have a continuing obligation under Rule 11 to advise the court of any changes regarding the veracity of information before the court); *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991) (when it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest)".

For the reasons set forth in Defendants' Joint Motion for Summary Judgment (Dkt. at 118) as well as Defendant's Motion for Rule 11 Sanctions (Dkt. at 30) the plaintiff herein has no proof after the close of discovery and had no proof at the time this lawsuit was filed to support the allegations of its complaint. Accordingly Dandar should be advising his client to dismiss this lawsuit. If he has not so advised his client, a substantial question exists as to whether he does so in the best interest of his client or whether he does so to demonstrate false

loyalty in the face of the state court orders However, if he has so advised his client, his client is justified in questioning whether the advice emanates from the lack of proof or from his desire to escape his personal predicament. "Loyalty and independent judgment are essential elements in the lawyer's relationship to a client.…Loyalty to a client is impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interest. The conflict in effect forecloses alternatives that would otherwise be available to the client". See comment to Rule 4-1.7, Rules Regulating the Florida Bar. Attorney Dandar has the same conflict of interest in weighing any settlement offers received and advising on any settlement offers to be made.

In fact Rule 4-1.7 Rules Regulating the Florida Bar  should have been the foundation for Dandar's motion to withdraw. Moreover, this Court would likely have been compelled to grant such motion under Rule 2.03(c), M.D. Fla. Rules, which specifically recognizes compelling ethical considerations as a basis for attorney withdrawal in civil proceedings even when withdrawal will cause continuance or delay.

## V.      Rule 4-5.6(b), Rules Regulating the Florida Bar

In this Court's August 30, 2010 order denying Attorney Dandar's first motion for injunction the Court notes that Rule 4-5.6(b), Rules Regulating the Florida Bar has drawn little comment.  Rule 4-5.6(b) cannot be used as a basis to invalidate a private contractual obligation. *Lee v. Fla. Dept. of Ins. and Treasury*, 586 So.2d 1185, 1188 (Fla. 1st DCA 1991). Thus, regardless of whether Attorney

16

Dandar committed an ethical violation by contractually agreeing to dis-engage from further adverse actions, he cannot use that ethical violation as a means to escape his contractual commitment. Two wrongs do not make a right. Moreover, the questions of what the contractual language meant and whether it is enforceable are exclusively matters of state law, have been litigated in the state court system, have been appealed, reviewed and affirmed. The questions are simply not subject to review by this Court.

### IV.    Additional hearings

The FSO Church does not see the need for additional hearings, evidentiary or otherwise. The applicable law seems unusually clear. Federal courts have extremely limited authority to enjoin state proceedings. The ongoing state court proceeding clearly does not involve any type of *res* over which this court is exercising jurisdiction and this court has not issued any prior injunction which is being interfered with in any way by the state court. There are no federal constitutional rights implicated and Attorney Dandar has full appellate rights which he is currently pursuing. Both the state court and the federal court have clearly identified matters which are unrelated and independent of each other. The state court is enforcing a May 26, 2004 mediated settlement agreement to which Attorney Dandar is a party and this Court is resolving a wrongful death case brought by the Estate of Kyle Brennan.  Both courts have unfettered jurisdiction to resolve the issues before them.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court lacks the jurisdictional, statutory or constitutional basis and authority to enjoin the state court proceedings either via a temporary injunction or a preliminary injunction.  Furthermore the interests of comity dictate that this Court abstain from any narrow jurisdiction that it might somehow have. The Estate's second emergency motion for permanent injunction and motion for sanctions should be denied.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 13, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  LEE FUGATE, ESQ., lfugate@zukerman.com, attorney for defendants, Denise Gentile and Gerald Gentile; KENNAN G. DANDAR, ESQ., kgd@dandarlaw.net, attorney for plaintiff; and Kyle Thomas Brennan, RICHARD C. ALVAREZ, ESQ., Rick Alvarez ralvarez@alvarezgarcia.com attorney for Thomas Brennan.

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

/s/ Robert V. Potter
F. Wallace Pope, Jr.
Florida Bar No. 0124449
wallyp@jpfirm.com
Robert V. Potter
Florida Bar No. 0363006
bobp@jpfirm.com
Post Office Box 1368
Clearwater, Florida 33757
Telephone:(727) 461-1818
Fax: 727 462-0365
Counsel for Church of
Scientology Flag Service
Organization Inc.

537864v1