UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESTATE OF KYLE THOMAS BRENNAN,
by and through its Administrator,
Victoria L. Britton,

      Plaintiff,

v.                                  CASE NO.: 8:09-cv-00264-T-23-EAJ

CHURCH OF SCIENTOLOGY
FLAG SERVICE ORGANIZATION, INC.,
DENISE MISCAVIGE GENTILE,
GERALD GENTILE, and
THOMAS BRENNAN,

      Defendants.
_____/

## **ORDER**

Kennan Dandar ("Dandar"), counsel for the Estate of Kyle Thomas Brennan (the "Brennan Estate"), submits the "Plaintiff's Second Emergency Motion for Permanent Injunction and Motion for Sanctions."  (Doc. 113)  The motion requests a permanent injunction against the defendant Church of Scientology Flag Service Organization, Inc., and the circuit court of Pinellas County, Florida.  The defendant responds in opposition. (Doc. 134)

## BACKGROUND

### 1.   The Brennan Wrongful Death Action Against Scientology

On February 13, 2009, in the United States District Court for the Middle District of Florida, the Brennan Estate sued the Church of Scientology Flag Service Organization, Inc., and others (collectively, "Scientology") for wrongful death.  (Doc. 1)  Filed by Dandar, the complaint alleges (1) that on February 6, 2007, twenty-year-old Kyle Brennan, while in a state of emotional and other turmoil and after meandering from state to state for more than a month, arrived in Clearwater to visit his father and (2) that on February 16, 2007, while "at his father's apartment in Clearwater, Florida, in a complex occupied by Scientologists," Kyle Brennan died from a self-inflicted gunshot wound. The complaint alleges that the defendants caused the death of Kyle Brennan (1) by negligently and recklessly depriving him, or by causing his father to deprive him, of Lexapro, a psychotropic medication prescribed for him by a treating psychiatrist and (2) by negligently and recklessly leaving in the apartment Kyle Brennan occupied a .357 caliber handgun, with which Kyle Brennan shot himself to death.

In May and June, 2009, the defendants (except the temporarily unserved Thomas Brennan) moved (Docs. 11 and 14) to dismiss the complaint, but the motions were denied (Doc. 28).  In due course, each defendant answered (Docs. 32, 33, 34, and 53). A case management and scheduling order (Doc. 50) set the discovery deadline, the pre-trial conference, and the trial.  Several extensions occurred.  (Docs. 58, 66, 111) The discovery deadline was August 2, 2010; the dispositive motion deadline was September 3, 2010; and the trial remains set for December, 2010.

On April 12, 2010, Dandar filed a motion entitled "Unopposed Involuntary Motion to Withdraw as Counsel for Plaintiff."  (Doc. 74)  Accompanied by the affidavit of Victoria Britton, Kyle Brennan's mother and the administrator of the Brennan Estate, the motion alleges that Dandar moves to withdraw only because Florida Senior Circuit Judge Robert Beach, ("state judge Beach") acting in an unrelated litigation in the state circuit court for Pinellas County, Florida, (the "McPherson action") has ordered Dandar to withdraw from his representation of the Brennan Estate in the instant action in federal court.  Including a legal memorandum, the motion further alleges:

> Plaintiff objects to this motion as evidenced in the attached Declaration by Plaintiff's Administrator, Victoria L. Britton, mother of the decedent.  Both she and [Dandar] have exhausted all efforts to find substitute counsel without success.
>
> The estate must be represented by counsel.  Plaintiff is an innocent third party who will be severely damaged by having no other attorney to take over representation in this case.

Scientology responded in support of the Brennan Estate's involuntary motion to withdraw and asserted that Dandar's representation of the Brennan Estate was "totally inappropriate" and "a disservice to his client, the court, and the interests of justice." (Doc. 75)

An April 22, 2010, order (Doc. 77) denies Dandar's motion to withdraw and elaborates the reason.  First, the order notes that under Local Rule 2.03(b) an attorney in the Middle District of Florida cannot withdraw without leave of court obtained after notice to the "client affected thereby."  Next, the order notes that Dandar is the Brennan Estate's chosen and preferred counsel and that the Brennan Estate objects to the withdrawal.  As a supplement, Victoria Britton, Kyle Brennan's mother and administrator

- 3 -

for the Brennan Estate, deposes in the affidavit that, after a rigorous search, she cannot

retain a substitute counsel and that:

> I talked to many lawyers in different states and each turned me down as
> soon as they heard it involved the Church of Scientology. Some turned me
> down due to conflict, since some had represented Scientology in the past
> or are currently representing the organization, but many turned me down
> because it is an entity they do not want to litigate against.

(Dandar has stated that he has announced by an internet "list-serv" familiar to trial

lawyers in the Tampa Bay area the availability of the representation but received no

inquiries in response.)  The order finds "that Dandar remains a member in good

standing of The Florida Bar and the bar of the Middle District of Florida, that Dandar is

able and willing to represent the plaintiff, and that the parties identify neither a conflict of

interest nor any other legally cognizable barrier to Dandar's continued representation in

this matter, already unnecessarily delayed."  The order includes a footnote that offers a

summary observation:

> The circumstances of this case present no occasion for an independent
> determination of whether some contractual obligation or implementing
> order of a state court restricts (or lawfully could restrict) Dandar's
> representing the plaintiff in this action.  The circumstances of this case
> require only confirmation that the plaintiff's counsel is a member of The
> Florida Bar and the bar of this court under no disciplinary or other disability
> imposed by either this court or the Supreme Court of Florida. <u>See</u> Local
> Rule 2.04(b).  Except for reasons associated with lawfully imposed
> discipline, this court is without authority to restrict the general practice of
> law by a member in good standing of the bar, whether pursuant to private
> agreement or otherwise.  <u>See, e.g.</u>, Rule 4-5.6(b), Rules Regulating The
> Florida Bar.

As a result of a May 21, 2010, status conference the parties exchanged witness lists

(Docs. 81 and 82) and otherwise progressed toward trial.  A motion to compel resulted

in a hearing on August 19, 2010, over a discovery dispute, which involved an assertion

by Scientology of Florida's cleric-penitent testimonial privilege.  An August 31 order

(Doc. 112) manages the dispute by ordering an *in camera* inspection of documents on

September 3, 2010, after which the discovery dispute was resolved.

However, on August 25, 2010, the Brennan Estate filed a motion entitled

"Estate's Emergency Motion for Injunction" (Doc. 104), in which the Brennan

Estate (1) alleges that state judge Beach issued "an Order to Show Cause why the

Estate's counsel should not be held in indirect criminal contempt for failing to secure

withdrawal from this case . . ." and (2) requests a writ directed to Scientology and, "if

necessary, the State Circuit Court to prohibit interference with this Court's orderly

progression of this case."

Scientology responded (Doc. 105) in opposition to the Brennan Estate's motion,

attacked the veracity of Britton's affidavit, complained of "numerous conduct issues,"

alleged that Dandar "apparently suborned perjury by his own client," and stated:

> As (improperly) disclosed in the emergency motion, the ongoing state
> court proceedings seek to enforce a state court order directing Mr. Dandar
> to withdraw from the case at bar.  Mr. Dandar has simply flaunted [sic] that
> order and now, not surprisingly, faces increasing penalties as a result.

A legal memorandum included in Scientology's response (1) argues that the principles

of the so-called "Rooker-Feldman doctrine" preclude the district court from direct

appellate review of a state court order and (2) argues further that the Anti-Injunction Act,

28 U.S.C. § 2283, precludes the injunction sought by the Brennan Estate.

An August 30, 2010, order (Doc. 108) in the district court denies the Brennan

Estate's motion for an injunction and states explicitly the reason:

> Nonetheless, the state court entered an order purporting to direct Dandar to withdraw.  Dandar has attempted to comply with the state order, but his motion to withdraw was denied.  (Doc. 74)  The state court can neither command Dandar's withdrawal from this action nor otherwise interfere with the supervening federal jurisdiction.  Because no unlawful interference has occurred (and remains unlikely given the nature of the governing law and the provisions of Rule 4-5.6(b), Rules Regulating The Florida Bar, which have drawn little comment), Dandar's motion (Doc. 104) is DENIED.  Comity commands the federal court's not assuming that a state court will enter an unlawful order or interfere with the orderly administration of the federal court.

Recognizing that Scientology would press the state court for punitive relief against Dandar, the order concludes with the observation that "Dandar has attempted to comply with the state order, but his motion to withdraw was denied."  Although noting that the state court had not yet levied a sanction against Dandar and that the federal court would not act, especially injunctively, in anticipation of the state court, the order concludes by noting that "the Supreme Court of Florida allows for the orderly disposition of pending matters when suspending a lawyer from practice.  Leaving a client unrepresented because of a court order would bring disrepute on the courts."

On September 2, 2010, the Brennan Estate interposed the "Plaintiff's Second Emergency Motion for Permanent Injunction and Motion for Sanctions" (Doc. 113), which alleges that "the state court judge, Robert Beach, of the Sixth Judicial Circuit, in and for Pinellas County, Florida, . . . has issued a severe sanction which interferes with counsel's ability to comply with this court's order" (denying the motion to withdraw) and which "is causing great, immediate, and irreparable harm and infringement on Plaintiff's constitutional right in her choice of counsel."

The next day, September 3, 2010, the parties appeared at a hearing initially scheduled as a hearing on a discovery dispute but re-noticed (Doc. 114) to include the pending "second emergency motion" filed on September 2nd.  After the resolution of the discovery dispute, the parties addressed preliminarily the Brennan Estate's motion for injunction (Scientology still enjoyed several days in which to file a written response in opposition).  At the outset of this hearing and as Dandar arose to argue in furtherance of the Brennan Estate's motion for an injunction, Robert Potter, counsel for Scientology, arose to interpose an objection to discussion in public of the pending motion:

> MR. POTTER:  THE PROBLEM IS THAT THE STATE COURT ORDER, WHICH IS AT THE CORE OF MR. DANDAR'S MOTION, IS AN ORDER THAT IS UNDER SEAL AND ALL THE PROCEEDINGS ARISING OUT OF THOSE ORDERS HAVE BEEN UNDER SEAL.
>
> THE COURT:  UNDER SEAL FOR WHAT REASON?
>
> . . . .
>
> MR. POTTER:  -- PURSUANT TO AN AGREEMENT BETWEEN THE PARTIES THAT THOSE PROCEEDINGS WOULD BE CONFIDENTIAL.
>
> THE COURT:  I DIDN'T KNOW THE LAW IN THE STATE OF FLORIDA ALLOWED SEALING BY STIPULATION.
>
> MR. POTTER:  IT DOES.  AND –
>
> THE COURT:  NOW, MR. POTTER, THERE HAVE BEEN ALL SORTS OF CONSPICUOUS CASES THAT WOULD CHALLENGE THAT NOTION.  BUT, ANYWAY, IT IS, IN FACT, UNDER SEAL, RIGHT, WRONG OR INDIFFERENT.
>
> MR. POTTER:  RIGHT.

THE COURT:   DOES THAT INCLUDE THE ORDER, THE ORDER?

MR. POTTER:   YES.

THE COURT:   THAT I CANNOT SEE THE ORDER?  DO YOU
        HAVE THE ORDER?

MR. POTTER:   EVERY ORDER HAS A BIG STAMP ON IT THAT
        SAYS, SEALED BY ORDER, DATED SUCH AND
        SUCH.  THE PROBLEM THAT IT PRESENTS, YOUR
        HONOR, IS I CAN'T SIT HERE AND TALK ABOUT IT
        WITHOUT VIOLATING THE STATE COURT
        ORDER, WHICH I REALLY DON'T WANT TO DO.

. . . .

THE COURT:   I APPRECIATE YOUR COMMENTS, MR. POTTER, AND
        YOU HAVE TO GOVERN YOURSELF ON THIS.  I
        UNDERSTAND YOU'RE TELLING ME THAT YOU CANNOT
        PARTICIPATE, APPARENTLY, IN THE DISCUSSION OF
        THIS MOTION THAT I HAVE, BECAUSE OF THE ORDERS
        ENTERED BY A CIRCUIT JUDGE.

MR. POTTER:   WELL, I'M SAYING, YOUR HONOR, THAT I RUN
        THE RISK OF VIOLATING A COURT ORDER IF I
        DO.  I'M NOT GONNA STAND HERE AND REMAIN
        SILENT, BUT I WAS HOPING TO SOLVE THE
        PROBLEM BY HAVING THESE PROCEEDINGS
        UNDER SEAL, AT LEAST UNTIL SUCH TIME THAT
        YOU CAN UNDERSTAND THE REASONS THAT
        THE STATE COURT'S ARE UNDER SEAL AND
        UNDERSTAND WHY WE MAY BE IN BREACH OF
        THOSE ORDERS IF WE PROCEED.

THE COURT:   WELL, MAYBE I WASN'T CLEAR, BUT I ASKED
        YOU WHY IT WAS UNDER SEAL, WHY THE CASE
        WAS UNDER SEAL.  IF THERE WAS SOME
        REASON, COGNIZABLE IN THE LAW, TO SEAL A
        PROCEEDING, IT'S NOT APPARENT TO ME WHAT
        IT IS.  THIS APPEARS TO ME TO BE A CASE
        WHERE SOMEBODY IS SUING – ARISING FROM A
        DEATH AND SUING SOMEONE IN FAIRLY
        TYPICAL FASHION.  THERE DOESN'T APPEAR TO
        ME TO BE ANYTHING SEALABLE ABOUT IT.

MR. POTTER:      BELIEVE ME, YOUR HONOR --

THE COURT:       YOU KNOW, A LOT OF TIMES WHEN THESE
                 PARTIES, LIKE SOME OF THE CELEBRITY
                 DIVORCE CASES, I THINK, WERE THE ONES
                 THAT WERE LAST IN THE NEWSPAPER.  WHERE
                 THE PARTIES WERE STIPULATING THAT THEY
                 BE SEALED JUST TO AVOID THEIR PUBLIC
                 EMBARRASSMENT, WHICH IS UNDER-
                 STANDABLE.  AND, FRANKLY, WHEN IT MAY
                 REFLECT ON THEIR CHILDREN SOMETIMES, IN
                 SOME RESPECTS, COMMENDABLE, BUT NOT A
                 LAWFUL REASON TO SEAL A DIVORCE CASE.

MR. POTTER:      PLEASE UNDERSTAND, JUDGE, THERE IS
                 NOTHING TYPICAL ABOUT THE LOWER
                 PROCEEDINGS.

THE COURT:       I'LL STIPULATE TO THAT.

MR. POTTER:      I DON'T STAND HERE AND BE AN EXPERT AND
                 TELL YOU ALL THE REASONS THAT THAT WAS
                 SEALED.  THERE IS AN ORDER LAYING OUT
                 EXACTLY WHY IT IS SEALED.

THE COURT:       AND I TAKE IT THAT'S A SEALED ORDER?

MR. POTTER:      YEAH.

THE COURT:       NOT AVAILABLE TO ME?

MR. POTTER:      IT IS.

THE COURT:       I HAVE NO LAWFUL REASON.  I CANNOT
                 DELEGATE MY POWER TO SEAL TO SOME
                 SENIOR CIRCUIT JUDGE.

The events outlined by the parties at the September 3rd hearing warrant a

departure from the narrative of events in the federal Brennan wrongful death action and

require a description of the sealed state court proceedings in the McPherson wrongful

death action.  Apparently, the state court docket is unsealed but the filed papers,

including any transcripts, are sealed, and the hearings held in circuit court before state judge Beach are closed to the public and the press, although some select documentary exceptions to the seal have emerged in very recent days.  The district court has derived the following, partial knowledge of the closed and sealed state court proceedings over several weeks from the undisputed statements of counsel in their papers and at hearings and from a sampling of the state court papers yielded to the district court, apparently with (but perhaps occasionally without or in anticipation of) the consent of state judge Beach.

### 2.  <u>The McPherson Wrongful Death Action Against Scientology</u>

In 2000, in the circuit court for Pinellas County, Florida, Dell Liebriech, as personal representative of the Estate of Lisa McPherson, sued the Church of Scientology for wrongful death.  After acrimonious litigation and after mediation conducted confidentially, a settlement occurred.  The settlement includes both the McPherson action and one or more other actions, including at least one action in Texas, in which Dandar (as a named party) and Scientology were adversary parties.  The McPherson action became sealed and closed contemporaneously with the sealed settlement.  A December 15, 2006, order entered at the "request" of the state clerk of circuit court offers what the state judge Beach describes as "clarification regarding the sealing of the documents" in the McPherson action:

> D.  During the confidential mediation that occurred on May 26, 2004, the parties reached a confidential settlement agreement, and all consideration has been heretofore transferred pursuant to said confidential settlement agreement.

E.  Confidentiality was essential to the settlement of this case, and the parties have reasonably expected confidentiality to prevail with respect to all post-settlement issues that arise.

F.  The Court has heretofore ordered various post-settlement pleadings, motions and orders sealed to protect the confidentiality that the parties bargained for, agreed to and relied upon in the settlement of this case.

G.  The Court originally authorized the sealing of settlement and post-settlement matters in this case because failure to do so would have precluded settlement and would present a serious and imminent threat to the fair, impartial and orderly administration of justice.

. . . .

Accordingly, based upon the foregoing findings, it is hereby

ORDERED that:

1.  The Court re-affirms its earlier orders directing that the court file in this matter be sealed as to all filings in this cause on and after May 26, 2004.

This order from state judge Beach continues to govern the state court proceedings.

As counsel for the Brennan Estate, Dandar filed the complaint for wrongful death in the instant action on February 13, 2009.  At that moment, the McPherson wrongful death action against Scientology was already settled and sealed and, consequent upon the settlement, the McPherson action was dismissed with prejudice—unconditionally and without reservation of jurisdiction for any purpose whatsoever (although the settlement agreement provides for a reservation of jurisdiction, none occurred).  At the moment of Dandar's filing the complaint in the instant action, no court order purported to limit Dandar's practice, to preclude his representing a client in an action against Scientology, or to levy against him any penalty because of his compliance with a district court order requiring his continued representation.

- 11 -

Although the antecedent events are effectively obscured by the state circuit court's imposition of secrecy, state judge Beach on June 10, 2009, four months after Dandar initiated the Brennan Estate's wrongful death action in federal court, issued an "Order on the Enforcement of Settlement Agreement," an order that evidences the outbreak of further acrimony and conflict in the McPherson action.  The order includes "the salient parts of the Settlement Agreement" and particularly includes the provision that purportedly restricts Dandar's practice and that Dandar and Scientology mightily dispute, which states:

> The McPherson Parties agree to full, permanent disengagement from Scientology Parties, including no further anti-Scientology activity, and no involvement in any adversarial proceedings of any description against the Scientology Parties under any circumstances at any time.  The Scientology Parties agree to full, permanent disengagement from the McPherson Parties, including no further anti-McPherson party activity, and no involvement in any adversarial proceedings of any description against the McPherson Parties under any circumstances at any time.  For purposes of this paragraph "Scientology" shall include the Scientology Parties and any Scientology related entities.

> *Signed:*

> Kennan G. Dandar, Esq., counsel for Dell Liebreich, both individually and as personal representative for the Estate of Lisa McPherson, and authorized signatory on behalf of the Estate of Fannie McPherson, the Estate of Ann Carlson, Kennan G. Dandar, Thomas J. Dandar, Dandar & Dandar, P.A., Lee Skelton and Sam Darden Davis.

Because Dandar is included within the contract's definition of "the McPherson parties," state judge Beach found in the June 10, 2009, order that the first sentence quoted immediately above ("The McPherson parties agree to full, permanent . . . .") "is clear, unambiguous, and understandable for the proposition that attorney Kennan Dandar agreed not to represent persons, firms, or other legal entities in 'any adversarial

proceedings of any description against the Scientology Parties under any circumstances at any time.'"  In sum, on June 10, 2009, four months after Dandar initiated the instant action in the district court, the state circuit court for the first time construed the settlement agreement in the McPherson case in state court to prohibit Dandar from representing Britton as the administrator of the Brennan Estate in the February, 2009, action against Scientology in the federal district court.  In other words, the court construed an agreement that purports to bind Dandar "individually and as personal representative" of an estate and as an "authorized signatory" for others as an agreement that by implication bars Dandar—in his capacity as a member of The Florida Bar and the bar of the Middle District of Florida—from representing an unrelated client in an unrelated action, in another court, albeit against the same defendant.  The June 10, 2009, order of the circuit court states that "Dandar is ordered to cease representation of all persons and entities, other than the plaintiff in this case, in all matters, claims or cases and/or matters now or in the future against the Church of Scientology."

Dandar objected to the circuit court's interpretation of the settlement agreement on several grounds, including that, as interpreted by the state court, the agreement offends Rule 4-5.6 of the Rules Regulating the Florida Bar, which states:

> A lawyer shall not participate in offering or making:  (a) . . . or (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.

In the June 10, 2009, order, state judge Beach quickly dismissed Rule 4-5.6 as follows:

a)  Cases defining the scope of Rule 4-5.6(b) of the Rules Regulating attorneys were decided subsequent to the effective date of the Settlement Agreement and [are] not authority for voiding the Settlement Agreement.

b)  Valuable consideration was paid by the Church and to the Plaintiff and never returned to the church.

c)  Other cases pending before the Court brought by the Church against Ken Dandar and dismissed by the Church as part of the Settlement Agreement may not be able to be revived in the event the Settlement Agreement is declared void and the Church would be irreparably damaged.

d)  Attorney Kennan G. Dandar's actions against the Church clearly show he has some personal cause to punish the Church for reasons unknown to the Court which interfere with his ability and professional responsibility to render effective representation to his client which in turn interferes with the orderly progress of the case through the court system.  The Church is justified in having attorney Dandar desist from using the court system to pursue his hostile personal actions against the Church unrelated to the merits of his client[']s case.

(On November 13, 2009, Florida's Second District Court of Appeal affirmed the June 10, 2009, order "per curiam" and without an opinion.)

A February 19, 2010, order of the state circuit court denies Dandar's "Motion to Void the Mediation Agreement Due to Scientology's Continuous Bad Faith Breaches of the Mediation Agreement" and grants Scientology's "Motion to Enforce Order Enforcing Settlement Agreement by Civil Contempt and Civil Fines."  The motions and other papers remain under seal and unavailable to the district court, the public, and the press. The February 19, 2010, state court order discusses Dandar's argument that the Local Rules of the Middle District of Florida require court approval to withdraw as counsel in a pending action and that, in the words of state judge Beach, "the federal judge will not allow him to withdraw from that case."  The February 19, 2010, order summarizes the conclusion of state judge Beach:

- 14 -

Dandar has made no showing that he has filed a motion before the federal judge requesting to be released as counsel and that any such motion has been denied.  Further, Dandar has made no showing that the rules to which he cites as authority preventing his withdrawal from the federal case would prevail over an order of a court requiring his withdrawal.

An April 12, 2010, order by state judge Beach states that a hearing occurred on March 24, 2010, to resolve Scientology's "Motion to Enforce Order Enforcing Settlement Agreement by Civil Contempt and Civil Fines" and Scientology's "Renewed Motion to Enforce Court's Orders of June 10, 2009, and February 19, 2010, by Civil Contempt and Imposition of Civil Fines," as well as Dandar's "Notice of Lack of Subject Matter Jurisdiction."  The April 12, 2010, order rules in favor of Scientology and against Dandar on each issue of fact and law and assesses "liquidated damages of $50,000 for Kennan Dandar's breach of the settlement agreement, for which sum let execution issue. Kennan Dandar and Dandar & Dandar, P.A., shall pay said liquidated damages to the Church of Scientology."  Additionally, the April 12, order states:

> 4.  Additionally Kennan Dandar and Dandar & Dandar, P.A. are found to be in willful civil contempt of this court's previous orders of June 10, 2009, and February 19, 2010, are directed immediately to file a motion for leave to withdraw in the Brennan case.  Furthermore Kennan Dandar and Dandar & Dandar, P.A. shall have until 5:00 p.m., April 23, 2010, to accomplish withdrawal from the Brennan case.  If they fail to withdraw from said case, a civil penalty of $1,000 per day shall accrue against them, jointly and severally beginning April 24, 2010, and continuing for each day thereafter until withdrawal is accomplished.

> 5.  Provided that Kennan Dandar and Dandar & Dandar, P.A. immediately file a motion for leave to withdraw in the Brennan case, the Church has agreed that it shall take no action to enforce the Court's award of the $50,000 in liquidated damages until such time as Mr. Dandar's pending motions for relief against the Church are heard and determined by the Court.

> 6.  Kennan Dandar shall promptly schedule a hearing on his motions and shall schedule said hearing in such a way that the Church's principal

witness, Monique Yingling of Washington, D.C., can make herself
available in Florida for such hearing.

(A party may request oral argument on a motion in the Middle District of Florida but may

not "schedule a hearing" at a chosen time.)

A May 6, 2010, order by state judge Beach directs Dandar and his firm to

"appear before this Court on May 25, 2010, at 9:00 a.m. to show cause why they should

not be held in indirect criminal contempt of this Court's orders of June 10, 2009, and

April 12, 2010."  This order offers state judge Beach's explanation for the criminal

contempt proceedings against Dandar:

> (d)  Instead of filing a simple motion to withdraw from the Brennan case,
> Kennan Dandar and Dandar & Dandar, P.A. filed an "Unopposed
> Involuntary Motion to Withdraw as Counsel for Plaintiff," to which Kennan
> Dandar and Dandar & Dandar, P.A. attached an affidavit of their client
> objecting to the filing of the motion for leave to withdraw and arguing
> against the Federal Court granting the motion.  Kennan Dandar and
> Dandar & Dandar, P.A. also argue to the Federal Court that this Court
> lacked subject matter jurisdiction and that Kennan Dandar and Dandar &
> Dandar, P.A. had filed for a writ of prohibition with the Florida Supreme
> Court.  A copy of Dandar['s] "involuntary" motion for leave to withdraw is
> attached as Exhibit A to this order.

> (e)  As a consequence of the Dandar "involuntary" motion to withdraw, the
> U.S. District Court on April 22, 2010, entered a three page order denying
> the motion for leave to withdraw in which the Court expressly finds that
> "manifestly, neither the attorney (Dandar) nor the client consent to
> withdrawal."

> (f)  The filing of the "involuntary" motion for leave to withdraw constitutes a
> willful violation of this Court's prior orders directing Kennan Dandar and
> Dandar & Dandar, P.a. to withdraw from the Brennan case.

Finally, the parties have provided the district court a September 3, 2010, letter

from F. Wallace Pope, who in concert with Potter represents Scientology, to state judge

Beach, which letter includes an attached "proposed order."  The proposed order finds

that "Mr. Dandar's 'involuntary' motion was not a reasonable, good faith effort to comply

with this Court's prior order.  It was a deliberate effort to avoid compliance with this

Court's orders."  The proposed order provides as follows:

> 3.  This Court, by separate, recordable money judgment, will enter a money judgment against Kennan George Dandar and his firm, Dandar & Dandar, P.A., a Florida Professional Association, jointly and severally, in the amount of $130,000, which is the accumulated amount of civil penalties, accumulating at the rate of $1,000 per day, for the period April 24, 2010, through August 31, 2010, in accordance with this Court's prior contempt order entered April 12, 2010.  If Kennan G. Dandar and Dandar & Dandar, P.A. wish to obtain a stay of the final money judgment provided for herein, they shall post a supersedeas bond pursuant to the provisions of Rule 9.310(b)(1), Fla.R.App.P.

> 4.  The Court hereby schedules a subsequent hearing in this matter to be held on October 1, 2010, beginning at 2:00 p.m. for a period of two hours in which the Court will consider whether to suspend Kennan Dandar's license to practice law in the State of Florida if he has not effected a withdrawal from the Brennan case in the U.S. District Court in Tampa by the date of hearing scheduled herein.  It is intended that this provision be coercive in nature.

> 5.  The Court hereby reserves jurisdiction of the parties and the subject matter for purposes of determining whether attorneys fees and costs should be awarded to the church and for purposes of entering further appropriate orders.

The letter includes a proposed money judgment against Dandar for $130,000 plus 6%

judgment interest.  The judgment retains jurisdiction to assess attorneys fees and costs

and requires Dandar within forty-five days to complete and serve on Scientology's

counsel a Form 1.977(a) and (b), which are forms provided in the Florida Rules of Civil

Procedure for individual and business entity judgment debtors and which interrogate the

debtor concerning assets, income, spouses and children, personal identifiers such as

Social Security number, financial resources such as bank accounts, and the like.

As the district court convened a September 28, 2010, hearing on Dandar's pending motion for an injunction, state judge Beach scheduled an October 1, 2010, hearing to entertain "suspending" Dandar from the practice of law.  Although state judge Beach already has decided to enter the proposed order and the accompanying money judgment, the parties agreed to request, and successfully requested, that state judge Beach not enter the order and money judgment (and not thereby triggering execution and levy against Dandar for $130,000) until September 28, 2010, the day of the hearing in the district court on Dandar's motion for an injunction.

In other words, the tortuous series of events in the federal and state court litigations, described above, has arrived at a telling intersection.  Assuming no intervention, Scientology will give the nod to state judge Beach to enter the proposed order and the money judgment immediately after the September 28 hearing, and Scientology promptly thereafter can docket an execution, begin discovery in aid of execution, and levy against the assets of an attorney who, on behalf of the estate of a deceased twenty-year-old, sues Scientology in a wrongful death action scheduled for trial in December, 2010.   All because the district court denies Dandar's motion to withdraw and insists that, absent an attorney to substitute, Dandar complete his representation of the Brennan Estate in the pending wrongful death action.

## DISCUSSION

State judge Beach in the McPherson action undertakes both to enjoin and to sanction for contempt an attorney who practices in a United States district court.  That is unremarkable and, unfortunately, not unknown.  However, in this instance the odd and incongruous premise for the sanction, the dramatic scale and rapid escalation of the

sanction, the extent of the resulting interference with completion of pre-existing and ongoing federal litigation, and the extent of the interference with both the regulation of the practice of law in the district court and the management of the federal docket result in a singular and perhaps wholly unprecedented circumstance that requires close and careful scrutiny.

First, state judge Beach levies supposedly "liquidated" damages ($50,000) against Dandar for an alleged breach of contract and assesses a punitive sanction ($1,000 per day) for contempt, both civil and criminal.  State judge Beach now threatens summary suspension or disbarment of Dandar from The Florida Bar.  State judge Beach proceeds against Dandar because he finds that Dandar failed to comply in good faith with state judge Beach's order to withdraw.  Apparently this conclusion is premised on Dandar's filing in district court an "involuntary" motion to withdraw from the federal action and asserting in district court that the state court lacks jurisdiction to order Dandar to withdraw.  However, neither of those items (both comfortably within Dandar's obligation of candor to the district court), although noted by the district court, played any role whatsoever in denying Dandar's motion to withdraw.  The pertinent order (Doc. 108) states precisely the reasons and the only reasons for denying Dandar's withdrawal:

> Because the plaintiff opposed Dandar's withdrawal, because Dandar is qualified to appear in this case, and because his withdrawal would inhibit the efficient and expeditious resolution of this litigation, Dandar's motion to withdraw was denied.  (Doc. 77) No reason appears that alters the merit of that decision, and, absent some action by the Supreme Court of Florida that affects Dandar's eligibility to practice in Florida (which, under the Local Rules, affects his ability to practice in the Middle District), no action by a lower state court will change that decision.

Nothing Dandar said or failed to say, wrote or failed to write, or disclosed or failed to disclose, had anything to do with the decision to deny the motion to withdraw.  The motion to withdraw was denied only for the stated reasons.

Britton is the administrator of the Brennan Estate.  The administrator is not a lawyer and, by force of 28 U.S.C. § 1654; the law of Virginia, see, e.g., Kone v. Wilson, 630 S.E.2d 744 (Va. 2006); and the law of Florida, see Rule 5.030(a), Florida Probate Rules, the lay administrator cannot represent the Brennan Estate in the district court without counsel.  See also Devine v. Indian River County Sch. Bd., 121 F.3d 576, 581 (11th Cir. 1997).  If Dandar is disqualified and no other counsel is substituted, the wrongful death action of the Brennan Estate against Scientology is subject to prompt dismissal.  Particularly if the dismissal of the Brennan Estate's counsel is at the behest of the defendant, but regardless of the source, the district court will deny a withdrawal that is against the will of the Brennan Estate if the withdrawal prejudices the Brennan Estate, for example, by destroying or indefinitely delaying the client's opportunity to resolve the claim that the original counsel brought to the district court.

In an action in district court, the resolution of a motion to withdraw from representation (especially if the motion is filed contrary to the will of the client and, in this instance, by order of another court at pain of contempt) is peculiarly within the discretion of the presiding judge in district court.  The interests of justice in a federal action, the management of the bar of the federal court, and the management of the federal docket are peculiarly within the sound discretion of the district judge.

In this instance, state judge Beach reaches aggressively into the United States district court and purports to require at pain of contempt that a lawyer withdraw—not

merely that he move to withdraw but that he accomplish withdrawal—an end that in this case, as in every other case pending in the Middle District (and in most or all other places) remains outside the lawyer's capacity.   The stated (or unstated) reasons for state judge Beach's order are not subject to review in the district court, which incontestably lacks the power of direct appellate review of an order from a state circuit court.  Therefore, although the issues are interesting and provocative, the district court is not immediately concerned with several issues raised by the order or discussed by the parties in their many papers, including (1) whether a provision in the McPherson action settlement agreement expressly restricts only Dandar's actions in his own behalf rather than Dandar's practice of law in behalf of a third party; (2) if the settlement agreement restricts Dandar's law practice, whether the provision is judicially enforceable despite Rule 4-5.6, Rules Regulating The Florida Bar; (3) whether, if the agreement restricts Dandar's law practice, the lawyers who "offered" and "made" the agreement warrant discipline by The Florida Bar or the Middle District of Florida or both; (4) whether the subject provision of the McPherson action settlement agreement, if unenforceable, is severable from the settlement agreement without voiding the agreement; (5) whether after the settlement of the McPherson action the unconditional dismissal with prejudice—without an express reservation of jurisdiction to enforce the settlement agreement—permits the state court to later resume jurisdiction, by the filing of a motion rather than by the filing of a complaint with service of process; (6) whether a contract that specifies "liquidated damages" of $50,000, which are awarded, is further enforceable by an injunction, which requires a demonstration that the movant lacks "an adequate remedy at law"; (7) whether the $50,000 in "liquidated damages" constitutes

an unenforceable penalty rather than compensatory damages; (8) whether the nature of the judicial authority permits an injunction compelling a person to accomplish at pain of contempt an end not within the person's capacity to accomplish; and (9) more recently, whether a state circuit judge possesses authority to summarily and unilaterally suspend or disbar a member of The Florida Bar from practice in any court other than his own court, notwithstanding Rules 3-1.2 and 3-3.1, Rules Regulating The Florida Bar (Rules of Discipline) (as construed in opinions such as <u>Carnival Corp. v. Beverly</u>, 744 So.2d 489 (Fla. 1st DCA 1999)), which create in the Supreme Court of Florida "exclusive jurisdiction" to administer discipline, including suspension and disbarment.  Other issues abound, but correcting an error, even a manifest and palpable error, by the state circuit court exceeds the usual bounds of the district court.  (The propriety or effectiveness of the actions of another court are susceptible to review only in proper and defined circumstances, for example, if a party seeks to enforce a "void" judgment or a foreign judgment that offends an important public policy of the forum court and fails to warrant "full faith and credit.")  In the present circumstance, the focus of the district court is much more narrow and specific.

State judge Beach's order, awarding liquidated damages and assessing a punitive sanction against Dandar, visits on the district court an intractable choice between two abhorrent options.  On the one hand, if the district court denied Dandar's motion to withdraw, state judge Beach promised calamitous consequences to Dandar, including, apparently, "liquidated damages" of $50,000, a sanction of $1,000 per day, and the summary suspension or disbarment of Dandar from The Florida Bar.

On the other hand, if the district court granted the "involuntary" motion to withdraw and permitted Dandar to abandon, even if "involuntarily," the action he brought in district court, the Brennan Estate's choice of counsel is frustrated at the behest of Scientology, the litigation opponent, and as the result of a third-party contract to which the Brennan Estate is a stranger; the Brennan Estate is prejudiced as a result of events that occurred in litigation to which the Brennan estate is a stranger; and the Brennan Estate's claim arising from the violent death of Kyle Brennan warrants prompt dismissal or, at least, indefinite abatement, because Kyle Brennan's mother, the administrator, cannot prosecute the action without a lawyer.

The order of state judge Beach presents several components, depending on the observer's vantage.  First, state judge Beach cannot compel Dandar's withdrawal from representation in a district court.  State judge Beach (at least if unimpeded) can only punish Dandar for continuing the representation.  In other words, state judge Beach by awarding $50,000 in "liquidated damages" and assessing a fine of $1,000 per day effectively increases the price Dandar must pay to practice in the Middle District of Florida.  Viewed in this manner, state judge Beach has overruled the Board of Judges of the Middle District, who charge an initial admission fee of $165 plus a fee of $20 biannually or $10 per year for membership in the Middle District bar.  State judge Beach has increased Dandar's dues to $365,000 per year, plus $50,000 "up front."  Obviously, state judge Beach is without authority to levy an assessment for an attorney's practicing in the Middle District of Florida.  State judge Beach's undertaking this assessment impinges the Middle District Board of Judges' jurisdiction to govern the practice of law in the Middle District of Florida.

- 23 -

Second, as a practical matter, state judge Beach aims his coercive adjudications not at Dandar, who is powerless in the matter of withdrawal in the Middle District of Florida, but state judge Beach aims his coercion at the district court, whose jurisdiction, independence, and discretion state judge Beach aims to supersede by the imposition on Dandar and his family a fine of stunning severity and rapid escalation.  State judge Beach aims to assert his will in the district court by inflicting on the district court causal responsibility for the acute disruption of Dandar and his family.  At pain of a money judgment and levy against Dandar for $130,000 plus $1,000 more each day, plus imminent summary suspension or disbarment, state judge Beach demands that the district court sacrifice the best interest of the Brennan Estate as determined by the district court and forestall or terminate progress in federal court of a claim for the wrongful death of a twenty-year-old who suffered from an ailment that resulted in his treatment by a psychiatrist and his violent suicide.

This uncomfortable and ominous circumstance prompts inquiry about whether the orderly determination of a civil dispute and the observance of principles of comity between state and federal jurisdictions offers an established procedure that, if properly deployed and patiently pursued, avoids the present jurisdictional friction.  The readily apparent answer is that a judge should not undertake, directly or indirectly, overtly or though a surrogate, to compel an act by another judge, especially in a different jurisdiction.  (The nature of the judicial power permits a judge to order only that which the judge can accomplish through the sundry powers of the office.)

In this instance, if state judge Beach elects to police the enforcement of the provision of the McPherson settlement that purports to restrict Dandar's practice of law

(or, more properly, if Scientology chooses to seek enforcement in the district court of the supposed practice restriction), the proper mechanism is a motion to disqualify filed in the court in which the pertinent litigation is pending and before the court competent (using the term in its technical, legal sense of "judicial competence") to disqualify.  The present mess follows inexorably from the failure of state judge Beach to decline to order withdrawal of counsel in another court in another jurisdiction and his failure, at most, to order Scientology to file in the district court a motion to disqualify.  Of course, state judge Beach or Scientology or anyone else may refer an attorney to The Florida Bar for a due process hearing and, if deserving, discipline by the Supreme Court of Florida.  And, of course, if the district court resolves the motion to disqualify in a manner displeasing to Scientology or state judge Beach, review is in due course available with the Eleventh Circuit Court of Appeals.

As stated in <u>Airgas, Inc. v. Cravath, Swaine & Moore, LLP</u>, 2010 WL 624955 at *4 (E.D. Pa. 2010), in which the district court declined to resolve an issue of the disqualification of an attorney in an action in another forum, a state court:

> It would constitute an unprecedented intrusion of federal power upon a local court for this Court to dictate to the Delaware Chancery Court that a law firm [Cravath] was disqualified from representing a litigant [Air Products] in a proceeding before it.  Airgas has not produced any authority, and the Court has not located any, where such an extreme result has obtained.  <u>See e.g.</u>, <u>Dyntel Corp. v. Ebner</u>, 120 F.3d 488, 489, 491 (4th Cir.1997); <u>Liberty Mutual Ins. Co. v. Pietragallo, Bosick & Gordon</u>, No. 94-6682, 1995 WL 517613, at *3 (E.D. Pa. Aug. 25, 1995); <u>Camden Iron</u>, 894 A.2d at 99; <u>Airbus S.A.S. v. Wilmer Cutler Pickering Hale & Dorr, LLP</u>, No. 06-4261, 2007 WL 5084428, at *3 (D.C.Super. Jan.10, 2007) (all denying requests to bar law firm from representing client in litigation in another forum).

And, as Chief Judge J. Harvie Wilkinson, quoting District Judge Leonie Brinkema, noted in <u>Dyntel Corp v. Ebner</u>, 120 F.3d 488 (4th Cir. 1997):

> As the district court noted, "It's for the judge who is presiding over a proceeding to decide whether there is an ethical problem in the quality of the representation of the parties."

State judge Beach, acting at the behest of Scientology, ignores both this common sense formulation and sound principles of deference to another forum and assertively circumnavigates the route of a motion to disqualify and undertakes to achieve Scientology's goals by blunt force.  State judge Beach's chosen route deprives the district court of the rightful opportunity to determine whether Dandar is disqualified to practice in the Middle District of Florida and to represent the Brennan Estate in this wrongful death action, to weigh the best interest of the Brennan Estate, and to manage the district court's docket.

### A Remedy

Facing imminent frustration of the attempt to advance the Brennan wrongful death action against Scientology toward a December trial, the district court enjoys no just and reasonable option other than to act in defense of the district court's jurisdiction over the cases and controversies, parties, and lawyers in the district court and in protection and preservation of the status quo pending resolution of the action submitted to the district court for determination.

As Judge Tjoflat stated in <u>ITT Community Development Corp. v. Barton</u>, 569 F.2d 1351, 1359 (5th Cir. 1978):

> Both the All Writs Act and the inherent powers doctrine provide a federal court with various common law equity devices to be used incidental to the authority conferred on the court by rule or statute.  The All Writs Act may

be said to provide a federal court with those writs necessary to the preservation or exercise of its subject matter jurisdiction. The Act is necessary because federal courts, being courts of limited jurisdiction, would not otherwise possess the tools necessary to implement their jurisdictional grants. . . .

As we perceive it, the All Writs Act could have served . . . to curb conduct which threatened improperly to impede or defeat the subject matter jurisdiction then being exercised by the court.  [citation omitted] Conversely, conduct not shown to be detrimental to the court's jurisdiction or exercise thereof could not have been enjoined under the Act.  [citation omitted]  Thus, in the case at hand, for the turn-over order to have validity, it must be shown that it was directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.

. . . .

The All Writs Act also empowers a federal court to employ procedures necessary to promote the resolution of issues in a case properly before it. This power is limited, however, to the facilitation of the court's effort to manage the case to judgment.

See also Burr & Forman v. Blair, 470 F.3d 1019, 1027-28 (11th Cir. 2006).

Although no case involving facts markedly similar to the instant case appears, many cases describe and establish the district court's power to preserve federal jurisdiction, enforce orders, and advance to orderly completion the cases on the federal docket.  In re Linerboard Antitrust Litigation, 361 Fed. Appx. 392, 2010 WL 129712 (3d Cir. 2010); In re Egri, et al. v. Town of Haddam, et al., 68 Fed. Appx. 249, 2003 WL 21510422 (2d Cir. 2003); Newby v. Enron Corporation, et al., 2002 WL 31989193 (S.D. Tex. 2002).

### Conclusion

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), the court's inherent power to preserve its jurisdiction and preserve the status quo pending litigation, and for the reasons explained above, the motion (Doc. 113) is **GRANTED**.  State judge Robert Beach of Pinellas County, Florida, and any other judge of the Circuit Court for Pinellas County, Florida, or elsewhere presiding in <u>Estate of Lisa McPherson v. Church of Scientology Flag Service Organization, et al.</u>, Case No. 00-005682CI-78; UCN: 522000CA005682XXCICI; the defendant Scientology; the defendant Scientology's counsel in this action; and, pursuant to Rule 65(d)(2), Federal Rules of Civil Procedure, any other person or entity acting in concert with any of them and with actual notice of this order are **PERMANENTLY ENJOINED** from levying, assessing, or furthering to any extent any levy or assessment or any penalty, charge, damage, fine, suspension or revocation of any right, privilege, or emolument, or the like, including convening of a hearing or entry of any order or judgment, any execution or instruction for levy, any supplemental proceeding or discovery in aid of execution, or other undertaking of a similar nature, on account of Kennan Dandar's representation of the plaintiff in <u>Estate of Brennan v. Church of Scientology</u>, 8:09-cv-264-T-23EAJ, in the United States District Court for the Middle District of Florida, or his failure to accomplish withdrawal from representation in the case, or on account of the manner and means of his representation in the case, including the manner and means of his moving to withdraw.

The United States Marshal is **DIRECTED TO DELIVER FORTHWITH** by hand to

state judge Beach a copy of this order.

ORDERED in Tampa, Florida, on September 28, 2010.

_____

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE